USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  4 21 06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

IN re: Bayou Hedge Fund Investment Litigation                    06 MDL 1755 (CM)

_____x

This document relates to:

_____x

THE UNOFFICIAL ON-SHORE CREDITORS
COMMITTEE OF THE BAYOU FAMILY OF
COMPANIES,

        Plaintiff,

        -against-                                              06 Civ. 2379 (CM)

BAYOU GROUP LLC, et al.,

        Defendants.

_____x

ORDER CONSOLIDATING 06 CIV 2379 WITH MDL 1775
AND SCHEDULING CONFERENCE OF ALL PRIVATE
CIVIL MATTERS RELATING TO BAYOU INVESTOR SUITS

McMahon, J.:

       The plaintiff in the above-captioned action is an ad-hoc group of investors in certain
funds operated by the Bayou Group LLC, whose collapse in the summer of 2005 was the stuff of
headlines and led to criminal charges against the Funds' principals. The members of the
"Unofficial On-Shore Creditors Committee of the Bayou Family of Funds" invested in funds that
are incorporated in the United States (principally under the laws of Connecticut, New York and
Delaware) rather than in the Cayman Islands, where certain other Bayou funds were
headquartered.

       The complaint filed with this Court contains allegations that the defendants – the "On-
Shore Funds" and their principals, the convicted felons Samuel Israel III and Daniel Marino –
engaged in securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934
and Rule 10(b)(5) thereunder, as well as common law fraud. The allegations of the complaint,
both factual and legal, are in all material respects identical to the allegations one would find in a
typical action brought on behalf of all the investors in the defendant funds. Indeed, they are
substantially identical to those pleaded in an action brought by an individual investor in this

court, Gleason v. Bayou, 05 Civ. 8532 (CM), and to the allegations in a class action complaint brought on behalf of all investors in the Bayou Group of Funds (including the members of the On-Shore Committee), which was commenced in Connecticut and which has been transferred to this court for coordinated pre-trial purposes by the Judicial Panel on Multidistrict Litigation, Broad-Bussel Family Limited Partnership v. Bayou Group LLC, 06 Civ. 3026 (CM). Two other actions brought by entities that, like Gleason and the members of the Unofficial Creditors Committee, appear to be part of the proposed Broad-Bussel class, have also been transferred to this Court by the JPMDL. The court finally received the Order of Transfer and the files in those cases yesterday afternoon (after the hearing held on the morning of April 18 hearing). Bayou is a defendant in only one of those cases; the other seems to have been brought against an investment adviser who sold the Bayou Funds to investors. Jewish Federation v. Bayou, 06 Civ. 3025(CM); DePauw v. Hennessee, 06 Civ. 3028 (CM). That investment advisor, and other sellers of Bayou Funds, are also defendants in the class action.[1] While it appears that the individual plaintiffs have asserted claims against Bayou under various additional common law and state consumer protection law theories, the essence of the actions against Bayou is identical in all the lawsuits in which Bayou entities are named.

Not much has happened in any of the actions brought by Bayou investors, due primarily to the effort made to consolidate those cases in a single court. I do understand, however, that Judge Underhill has entered defaults against at least some parties in the Jewish Federation matter, which was pending before him.

Events relating to Bayou continue elsewhere, however.

Messers. Israel and Marino have pled guilty to securities and mail fraud and conspiracy charges and are presently awaiting sentence. As part of their sentence, they will be required to forfeit all their ill-gotten gains and make restitution, pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663(a), to their many investors. The United States Department of Probation, together with the United States Attorneys' Office, is working out a restitutionary scheme.

To ensure that there will be something to distribute, three civil forfeiture actions have been filed before me: one each by the Department of Justice, the SEC and the Commodities Futures Trading Commission. The SEC and the CFTC have already obtained permanent injunctions against Israel and the SEC has obtained a permanent injunction against Marino, all containing belt-and-suspenders forfeiture orders. With the consent of all three agencies, this Court has appointed Jim Shinehouse of Kroll Associates to assist the United States Marshals Service in effecting the liquidation of the property to be forfeited by Israel and Marino. To date, the Government has secured Bayou's principal known asset – approximately $100 million in certain direct deposit accounts at Wachovia Corporation in Arizona (originally seized by the Arizona Attorney General) – as well as some bank accounts, automobiles, silver bars, expensive cars and houses. This pot of money, supplemented by whatever else the Marshals Service secures

---

[1] I apologize to all parties if I have mischaracterized the claims in any actions – as I inadvertently did on April 18 at a hearing. We still do not have all the paperwork for these cases.

prior to the sentencings, will be disbursed to the investor victims of the Bayou fraud pursuant to the restitution order.

The Cayman Islands funds are in liquidation, under the supervision of a Cayman Islands court. The liquidators are Messers. Macrae and Cleaver of Kroll (Cayman) Ltd. They are charged with protecting the interests of the creditors of all the Bayou Cayman Islands funds (collectively referred to as the Off-Shore Funds). The Kroll Liquidators have filed an ancillary petition under Section 304 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut, and the Bankruptcy Court has stayed all litigation against the Off-Shore Funds "or any property in which they have an interest."[2]

What is not happening, apparently, is any effort to marshal the assets of the estates of the On-Shore Bayou Funds – the defendants in this case and their domestic affiliates. The Unofficial Creditors Committee formed and commenced the instant lawsuit to fill that void.

The Unofficial Committee asks this court to appoint yet another fiduciary (Mr. Shinehouse and the Kroll Liquidators being the others), whose mission will be to marshal the assets of Bayou that are not among the properties forfeited to the United States. The Unofficial Committee does not suggest that Kroll Associates – which is already liquidating the Cayman funds and assisting the Government – be given that role (possibly due to potential conflicts between the On-Shore and Off-Shore creditors). The proposed Receiver would be appointed as a representative of the Bayou Funds, not a representative of the members of the Unofficial Committee.

I am given to understand that the principal such assets are potentially fraudulent transfers made to Bayou investors in the form of withdrawals in the days and weeks prior to the funds' collapse. There may also be claims against professionals who assisted Bayou. In other words, what the Unofficial Committee hopes to have the Receiver do is what Bayou itself is not doing – identify those persons who could be sued for the money owed to Bayou, on whatever theory, and bring those lawsuits. The Receiver proposed by the On-Shore Committee would also serve as a point person for resolving disputes between the On-Shore Creditors and the Kroll Liquidator about whether particular identified assets were the property of the On-Shore or the Off-Shore Funds – and thus are available to satisfy the claims of the On-Shore or the Off-Shore creditors of Bayou.

It is certainly not unheard of for a creditor or group of creditors to seek appointment of a receiver in a situation like the one facing the court. Indeed, what the Unofficial Committee seeks is very much akin to what occurs in a bankruptcy where there are numerous claimants – a trustee is appointed, assets (including choses in action) are marshaled and pursued through subsidiary

---

[2] This order will result in a partial stay of some of the actions that have been transferred to this Court pursuant to MDL Docket Number 1755, since it appears from a cursory review of the docket sheets that lawsuits may have already been filed against some of the Bayou Off-Shore entities. Again, the MDL cases only arrived in the Southern District of New York yesterday (April 19), so I still have a lot to learn about them.

litigation, professional fees are apportioned and estates are settled. Creditors Committees are a staple of bankruptcy litigation. I asked why the Unofficial Committee had not chosen to proceed in the Bankruptcy Court; although I know very little about the Committee's members, it appears to be large enough to put the Bayou On-Shore Funds into involuntary bankruptcy if it chose to do so. I confess that I did not understand the answer given to my question at the April 18 hearing. Counsel representing the Unofficial Committee likened the course of action he was asking me to approve to the course of action followed in connection with the liquidation of Drexel Brunham Lambert. I am quite familiar with the Drexel liquidation, and so I know that it was carried out in the context of a bankruptcy proceeding. The last time this court appointed a receiver at the behest of the creditor of a corporate conglomerate, the corporations filed in bankruptcy the next day. I recognize that both Drexel and that conglomerate were interested in reorganizing their affairs and emerging from bankruptcy; Bayou, on the other hand, is going out of business and has no incentive to do anything. It has not, however, objected to the Unofficial Committee's proposal.

I have been advised that counsel in the one private action that was originally filed in this Court (Gleason) does not object to the Unofficial Committee's motion for appointment of a Receiver. However, none of the attorneys in the actions that are being transferred to this court knew about yesterday's conference, because we did not know who they were and their cases were not pending in this court until yesterday. I thus have no idea how they would feel about the Unofficial Committee's proposal.

I have the greatest respect for counsel who brought the action on behalf of the Unofficial Committee, and I understand the frustration of those substantial creditors and their desire to do something – anything – so that they are not left behind while the Off-Shore Creditors go about protecting their interests and this and that private parties bring lawsuits that could nibble away piecemeal at the Bayou Funds' estates. Moreover, I think that what they are proposing makes sense, as a practical matter. But I am reluctant to do anything as drastic as appoint a Receiver until I can get some idea of what the actions being transferred to this court for pre-trial coordination are all about, and solicit the views of those parties and their counsel.

As a result, I am not prepared to rule on the Unofficial Committee's motion for appointment of a Receiver today. However, I will rule as soon as I can conference all of the Bayou civil cases, which I intend to do on Friday, April 28, at 9 AM, in Room 110 at the Thurgood Marshall Courthouse, 40 Foley Square, New York City. I expect counsel for all parties to the MDL transferee cases (including the Bayou entities, Messers Israel and Marino, and the third party defendants) to be in attendance at that conference, as well as counsel for the Unofficial Creditors Committee. The Government, SEC and CFTC need not be involved in this conference. We will formulate a plan of action for going forward with the civil cases – the MDL docket and the Unofficial Committee's action (which I intend to consolidate, for discovery purposes, with the MDL docket) at that time.

The Unofficial Committee counsel needs to serve (by e-mail) a copy of its motion for appointment of a Receiver on the parties to the MDL lawsuits. Chambers will fax or e-mail a copy of the list of counsel that we have been able to compile in the last 24 hours.

Counsel are notified that I will set a very tight time line for discovery in the Bayou civil actions. They should take that into account as they think about what discovery will be needed and whether it would be advisable to have a Bayou discovery track and an outside adviser discovery track (and any other discovery track).

Dated: April 20, 2006

_____
U.S.D.J.

BY FAX TO ALL COUNSEL ("MDL Plus" Distribution List)